UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-cr-20698-SCOLA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

AIMAN ARYAN et al.,

    Defendants.

_____ /

## ORDER ON RENEWED MOTION FOR BOND

THIS MATTER is before the Court on the Renewed Motion for Bond [ECF No. 371], filed by Defendant Aiman Aryan. On the morning of January 5, 2012, the Court held a hearing to consider the Motion and the question of its jurisdiction in light of the remand order from the Eleventh Circuit Court of Appeals. In addition to the arguments made at the hearing, the Court has also carefully considered the record, including the Motion, the Government's Response, the Defendant's Reply, and the materials presented before Judge Moore. For the reasons explained below, the Court finds that it has jurisdiction to address the Defendant's Motion, but that the Defendant is not entitled to bond and should remain in detention while awaiting trial.

### Jurisdiction

A threshold matter is whether this Court has jurisdiction to take action on the question of bond, given the remand order from the Eleventh Circuit Court of Appeals. On October 27, 2011, Magistrate Judge Garber entered an order [ECF No. 155] detaining the Defendant. On October 31, 2011, the Defendant filed an appeal [ECF No. 163] of the detention order to the predecessor trial court, Judge K. Michael Moore. The appeal and the Government's response thereto contained numerous attachments and factual assertions that had not been presented to the Magistrate. On November 28, 2011, Judge Moore affirmed [ECF No. 273] the Magistrate's detention order without having conducted a hearing. The order did not specify whether Judge Moore had considered the new information provided by the parties in reaching his decision. On that same day, the Defendant filed a notice [ECF No. 274] that he was seeking interlocutory

review of the detention order before the Eleventh Circuit. Subsequently, on December 2, 2012, this case was transferred [ECF No. 321] to this Court.

On December 28, 2011, the Court of Appeals, unaware that the case had been transferred to a different trial judge, remanded to "the district court" for additional information before ruling upon the appeal. *See* 11th Cir. Remand Order [ECF No. 378] at 1. The Eleventh Circuit stated that it was remanding "on a limited basis" for purposes of obtaining clarification from the district court as to "whether it considered the evidence and factual arguments presented for the first time during the appeal from the magistrate's order to the district court." *See id.* If the district court did not previously consider the new evidence and arguments, the Court of Appeals further directed it to "explain why it declined to do so." *See id.* On the other hand, if it had considered the new material, then the district court was ordered to "provide a written statement of reasons that addresses the evidence and arguments." *See id.* at 1-2. The mandate also provided that the parties would have the opportunity to submit supplemental briefing to the appellate court after the district court responded. *See id.* at 2.

This Court conducted a hearing on January 5, 2012, during which the Government contended that this Court lacked jurisdiction in light of the still-pending appeal before the Eleventh Circuit and that Court's limited remand order. Having considered the parties' arguments, the Court finds that it has the jurisdiction necessary to entertain the Defendant's Renewed Motion for Bond. Given the specificity of instructions, the Eleventh Circuit clearly remanded with the impression that this case was still before Judge Moore and that he therefore would be in a position to clarify his prior order. As stated during the hearing, this Court obviously cannot divine Judge Moore's thinking as to the order now on appeal. The Court finds, however, that it may consider and rule upon the Defendant's Renewed Motion for Bond pursuant to its authority to conduct a *de novo* review under 18 U.S.C. § 3145(b).

The Court hastens to emphasize that it is *not* reviewing Judge Moore's order affirming pretrial detention. It is a rare occasion when one district court may sit in review of another district court's order, and this statute does not contemplate such action. *See United States v. Rouleau*, 673 F. Supp. 57, 58 (D. Mass. 1987) ("[S]ection [3145(b)] provides for review of a magistrate's order by district judges. It does not, however, cover the review of an order issued by a district court judge."). Instead, the Court will confine itself to a second *de novo* review of the

Magistrate's detention order in light of the new factual circumstances and evidence proffered by the Defendant.[1] *See, e.g.*, *United States v. Farmer*, 2006 WL 2375010 (S.D. Ill. Aug. 14, 2006) (district court ruling on second motion for review of magistrate's detention order).

### Renewed Motion for Bond

This Court's review of a detention order is governed by the standards of *United States v. King*, 849 F.2d 485 (11th Cir. 1988). In accordance therewith, the Court has conducted a *de novo* review of the Magistrate's order and has fully considered the new arguments and facts presented by the Defendant to Judge Moore and at the hearing before the undersigned. Specifically, the Court has considered the Magistrate's pretrial detention order, the transcript of the pretrial detention proceeding, the Defendant's appeal of the detention order to Judge Moore, the Government's response to that appeal, the Defendant's reply, the Defendant's statement in support of the appeal, the Government's supplemental filing of exhibit to the appeal, the Defendant's supplemental authority to the appeal, as well as the arguments and materials presented at the hearing before this Court.

Magistrate Judge Garber concluded that the Defendant posed a substantial risk of flight and that no condition or combination of conditions would assure his presence for future court proceedings. *See* Detention Order [ECF No. 155] at 1. The Magistrate reached this conclusion because, among other reasons, the Defendant grossly underrepresented his assets to pretrial services and had the means to leave the Country, with significant ties to Jordan and the Middle East. *See id.* at 2. The Defendant argues that these conclusions were reached in error, based upon untruths and inaccuracies.

The Defendant first contends that the detention order was entered upon the erroneous belief that he is both a naturalized United States citizen *and* a citizen of Jordan. Defendant

---

[1] As to jurisdiction, the Court concludes it is appropriate to err on the side of action here. In remanding for clarification from Judge Moore, the Eleventh Circuit stated that "[t]he court should enter such order promptly." *See* 11th Cir. Remand Order [ECF No. 378] at 2. Section 3145 similarly provides that motions pertaining to detention and release of a defendant "shall be determined promptly." *See* 18 U.S.C. § 3145. This Defendant is presently being detained while awaiting trial and he has moved this Court for bond. Under these circumstances, the interests of justice favor a prompt decision on the Defendant's Motion by this Court – the only "district court" the matter is presently before. The Court will therefore proceed to consider the merits of the Defendant's Renewed Motion for Bond.

explains in his papers, and argued at the hearing, that he is actually a Palestinian-born Arab who holds not a Jordanian passport, but rather a Jordanian "travel document" issued to stateless Palestinian refugees from the West Bank. This travel document, the Defendant contends, permits travel in and out of the Middle East without necessitating passage through Israel for Palestinians, but confers only limited rights as to the duration a refugee may remain in Jordan. Further, the Defendant argues that the travel document was obtained as early as 1992 and not in 2007, shortly after he obtained his United States passport, as the Magistrate had found. The Defendant contends that, contrary to the Government's belief, even if he were to flee to Jordan, he would be subject to extradition and forced to return to the United States. In the last ten years, the Defendant claims to have traveled abroad only three times – twice to visit family in Jordan and once for a family vacation to Paris.

The Defendant also emphasizes that he has significant ties to the United States and to this community. He points out that his wife and three children reside here and that he has a number of other close relatives, primarily cousins and uncles, living in Florida and other states. These relatives, like the Defendant, are professionals and business owners. The Defendant further notes that he has been in the United States since 1988, that he attended pharmacy school in Massachusetts, and that he has been a Miami resident since 1996. He started at Roberts Drug Store as an employee and worked his way to the position of owner, buying the business and working for nine years to expand it into a five-store chain. The Defendant stresses his commitment to the community and the neighborhoods serviced by his pharmacies, pointing to his donations to a nearby church for social services offered to local residents. The Defendant is a homeowner in the Pinecrest area of Miami, Florida. His children, all United States citizens, attend private school and participate in sporting activities with which the Defendant is involved. The Defendant's wife, also a United States citizen, is part of the PTA at the children's school. The wife and children allegedly hold Jordanian travel documents, but not passports, because they are not Jordanian citizens. As argued at the hearing, the Defendant also claims to have strong social ties here and holds season tickets to several of the area's sporting teams.

The Defendant next argues that the Magistrate improperly considered his gun ownership as a factor justifying detention. According to the Defendant, the weapons were lawfully obtained and are properly permitted. He emphasizes that they were owned not for any nefarious or

unlawful purpose, but for the protection of his pharmacies, many of which are located in low-income, poorly-policed areas. The Defendant also notes that he has no history of violence and there is no allegation that the guns are related to the indicted conduct.

Finally, the Defendant asserts that he did not fail to disclose the full extent of his assets to pretrial services. The Government stated that $1.6 million was seized from the Defendant's personal and business accounts, but he had reported to pretrial services that he only had $70,000 in his personal and business accounts. The Defendant contends that pretrial services asked him about personal assets, not business assets. Moreover, he claims that $1.3 million of the allegedly undisclosed money came from an account of a Roberts Drug Store that he does not own. Roberts Drug Store #3 is allegedly titled to a Florida corporation held by the Defendant's father and uncle, although the Defendant admits to being the corporation's secretary and to holding check signing privileges.

According to the Defendant, these facts, taken together, demonstrate that the Magistrate's detention order was based upon erroneous assumptions and that he is entitled to bond.

The starting point of the Court's analysis is the rebuttable presumption of 18 U.S.C. § 3142(e)(3). The Defendant does not dispute that, based on the charges in question, this presumption applies here. The question thus becomes whether any facts or evidence presented by the Defendant are sufficient to show that he is not likely to flee if released on bond.

The Defendant contends the "new" facts discussed above are significant because they undercut the conclusion reached by the Magistrate that he held dual citizenship, that he had the means and incentive to flee the Country, and that his ties abroad were more compelling than those here at home. This Court disagrees. Even accepting these facts as true, the Court finds it extremely significant that the Defendant was not fully forthcoming with pretrial services as to his finances.

The Defendant, through counsel, claims he was confused as to whether pretrial services asked him only about personal assets. He unconvincingly speculates that while "the government may claim the Pretrial Services Report reflects the interviewer asked for [the Defendant's] personal and business assets, the Report contains numerous errors which put that claim into question." *See* Def.'s Appeal [ECF No. 163] at 9. The Court does not find this credible, especially given that the indictment concerns his conduct through his business operations. It is

simply untenable that he would not have been questioned regarding his business accounts or that he would have misunderstood or been confused about whether to reveal such a significant asset.

Defendant claims that $1.3 million of the undisclosed $1.4 to $1.6 million came from an account of Roberts Drug Store #3, which he allegedly does not own. First, this claim is highly suspicious in light of the Defendant having held himself out as, at the very least, significantly tied to all five Roberts Drug Stores, both on the website and through representations made by his own attorneys to the Court as evidence of his substantial ties to this community.[2] Moreover, even accepting Defendant's claim as true, it is undisputed that he failed to disclose substantial assets – between $100,000 and $300,000, in fact – a far cry from the $70,000 he stated that he had. It is also clear that the Defendant did not mention he kept approximately $23,000 in cash at home in a safe. That the funds in question have now been seized does not moot this analysis, as the Defendant contends. To the contrary, regardless of whether these specific funds are available to him, the Defendant's failure to fully and accurately disclose leaves the Court in question as to whether he might be secreting *other* funds that could be used to flee and start his life anew elsewhere.[3]

In sum, these facts taken together leave the Court in doubt as to the Defendant's candor and motivations. Further, taken in tandem with other facts, the Court firmly believes the Defendant has the means, the ability, and the motive to abscond to Jordan – where immediate family members operate numerous pharmacies – or elsewhere in the Middle East, with his wife and children, if released on bond. To this end, the Court has considered the Defendant's claim that Jordan does have an extradition treaty, but it has no confidence that he would be returned to the United States under that treaty if he flees there.

After due consideration, therefore, the Court finds none of the facts and evidence offered by the Defendant demonstrate the Magistrate was wrong to order him detained pending the trial. Accordingly, the Court adopts the Magistrate's pretrial detention order, as supplemented by the

---

[2] The Court notes that such representations were made by the Defendant's predecessor counsel, not his present attorney.

[3] In his Emergency Motion for Pretrial Release to the Eleventh Circuit, the Defendant admits that his financial disclosures to pretrial services were inaccurate. He claims, however, that his misstatements were unintentional. *See* 11th Cir. Appeal at 3 n.2. Even if the Defendant was just being careless, or perhaps if he was playing fast-and-loose with the facts, the Court is still without assurance that the Defendant isn't capable of accessing other funds to flee.

findings above, and concludes that the Defendant is not entitled to bond. *See King*, 849 F.2d at 490-91 ("if the district court concludes that the additional evidence does not affect the validity of the magistrate's findings and conclusions, the court may state the reasons therefor and then explicitly adopt the magistrate's pretrial detention order.").

**DONE and ORDERED** in Chambers at Miami, Florida on January 6, 2012.

_____
**ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE**

*Copies to:*
U.S. Eleventh Circuit Court of Appeals
Designated U.S. Magistrate
All Counsel of Record